[No. 32412. Department Two. August 13, 1953.]

KEITH R. CLARK, *Respondent*, v. THE RETIREMENT BOARD OF THE STATE EMPLOYEES' RETIREMENT SYSTEM, *Appellant*.[1]

*The Attorney General* and *Elroy F. Wiehl, Assistant*, for appellant.

*Harold A. Pebbles*, for respondent.

SCHWELLENBACH, J.—There is only one question before us and that is, as stated by appellant, "whether or not the respondent, Keith R. Clark, was in the 'actual performance of duty' within the meaning of RCW 41.40.200 when he became totally incapacitated for duty *as the natural and proximate result of an accident occurring while in the service of an employer* without wilful negligence on his part." (Italics ours.)

The appeal comes to us on an agreed statement of facts. In order to avoid any possible misinterpretation on our part, we quote verbatim that portion relating to respondent's injury.

"On November 29, 1948 the claimant left Olympia at 9 a. m. on official business of his employer, the Employment

[1] Reported in 260 P. (2d) 348.

Security Department of the State of Washington. He drove to Yakima and checked into the Yakima Hotel at about 3 p. m. on that day. He then went to the Yakima branch office of his employer where he was engaged on state business until 5 p. m. He made arrangements to meet a fellow employee at 8 a. m. the following morning for a journey to Toppenish. Claimant also had with him on said trip an adding machine of his employer which he contemplated on delivering to the Pasco Branch office on November 30, 1948. The claimant was observed at the Yakima Hotel at 6:30 p. m. on November 29, 1948 and was observed at the same hotel at approximately midnight of the same date at which time he was on the way to his room. At both of these appearances the claimant appeared normal in every respect.

"Guests of the hotel who occupied the room directly below that of the claimant heard a dull thud outside their window at about 1 or 1:30 a. m. on November 30, 1948, but made no investigation of the same. At approximately 7 a. m. on November 30, 1948 the claimant was found in an unconscious condition clad only in his underwear shorts, upon an open roof directly below the window of his room from where he had apparently fallen some time after he had gone to his room as aforesaid. The temperature at that time was approximately 29 degrees above zero.

"When claimant was discovered he was immediately taken to the St. Elizabeth's Hospital in Yakima where he remained until December 11, 1948 at which time he was transferred to St. Peter's Hospital in Olympia. Upon examination at the hospital in Yakima on November 30, 1948, it was determined that the claimant was suffering as the result of said fall, a broken back, two skull fractures, a broken pelvis, a broken wrist, exposure and shock and as a result thereof he remained in a critical condition for many days following the accident. Because of said injuries the claimant suffered a total loss of memory of all events occurring from the time of his departure from Olympia at 9 a. m. on November 29, 1948 until he regained consciousness in the hospital at Olympia on or about December 25, 1948.

"The claimant as an employee of the state was on unrestricted travel authority whereby he could travel throughout the state on official business and submit vouchers for reimbursement of his travel expense at $6.00 per diem, computed at 25¢ per hour for all time away from his place of residence. Claimant did in fact file expense vouchers for and was paid for the period from 9 a. m. November 29, 1948

through midnight November 29, 1948, the latter date being an estimate of his superior as to the time claimant was injured. At the time of the accident the claimant was required to be in Yakima on official business of his employer and he was required to remain in Yakima or that vicinity on said business over night on November 29, 1948 and during the following day.

"At all times prior to said injuries the claimant was in apparent good health and exhibited no infirmities, either mental or physical."

February 25, 1949, Mr. Clark was granted a leave of absence, which was extended to February 25, 1950.

February 21, 1950, he applied to the retirement board for a duty disability retirement because of his accident. May 3, 1950, the board denied the application on the ground that he was not totally incapacitated.

June 3, 1950, he applied for a rehearing. This was granted. A hearing was held October 13, 1950, and on August 14, 1951, the board approved his request for retirement.

June 5, 1952, the state auditor rejected a voucher in Clark's favor, for the reason that there was a question as to the legality of the claim.

November 14, 1952, the board reopened the claim and reversed its prior decision for the reason that the claimant was not injured *as the natural and proximate result of an accident occurring in the actual performance of duty.*

November 25, 1952, Clark appealed to the superior court for Thurston county.

December 15, 1952, the court entered findings of fact, conclusions of law, and judgment reversing the board and directing it to approve and allow Clark's claim. This appeal follows.

We quote finding No. 1:

"That appellant Keith R. Clark is a member of the Washington State Employees Retirement System and he has heretofore become totally incapacitated for duty *as the natural and proximate result of an accident occurring in the actual performance of duty* while in the service of the State of Washington without willful negligence on his part." (Italics ours.)

RCW 41.40.200 provides:

"Subject to the provisions of RCW 41.40.310 and 41.40-.320, upon application of a member, or his employer, a member who becomes totally incapacitated for duty *as the natural and proximate result of an accident occurring in the actual performance of duty*, while in the service of an employer, without wilful negligence on his part, shall be retired: *Provided,* The medical adviser after a medical examination of such member made by or under the direction of the said medical adviser shall certify in writing that such member is mentally or physically totally incapacitated for the further performance of his duty to his employer and that such member should be retired: *Provided further,* That the retirement board concurs in the recommendation of the medical adviser." (Italics ours.)

However, this section codifies § 6, chapter 50, Laws of 1951, p. 128, which amended § 15, chapter 240, Laws of 1949, p. 929, which, in turn, amended § 21, chapter 274, Laws of 1947, p. 1182. Section 21 provided in part:

"Subject to the provisions of sections 33 and 34, upon application of a member, or his department head, a member who becomes totally incapacitated for duty *as the natural and proximate result of the actual performance of duty*, while in the service of the State of Washington, without wilful negligence on his part, shall be retired." (Italics ours.)

The language of § 21, chapter 274, Laws of 1947, and § 15, chapter 240, Laws of 1949, was identical.

The accident occurred either November 29 or November 30, 1948. The 1947 act was then in effect. The board's original ruling must have been under the provisions of that act. However, upon a reconsideration on November 14, 1952, the board acted under the 1951 act, because it denied the allowance "*for the reason that the claimant was not injured as the natural and proximate result of an accident occurring in the actual performance of duty.*" (Italics ours.) It is very obvious, from finding No. 1, that the superior court also ruled under the provisions of the 1951 act.

We do not wish to quibble over words, but we cannot review a decision rendered under a wrong statute. Respondent was, and is, entitled to have his claim considered

under the law in effect at the time his disability occurred. The legislature amended the 1947 act, and it must have had some purpose in so doing.

The judgment is reversed and remanded to the superior court with direction to refer the matter back to the retirement board with instructions to consider respondent's application for duty disability retirement under the 1947 act.

GRADY, C. J., HAMLEY, DONWORTH, and FINLEY, JJ., concur.